AGGED

**ORDERED in the Southern District of Florida on** _03/20/09_ .



_Raymond B. Ray_

Raymond B. Ray, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

In re:

VISION DEVELOPMENT GROUP,
OF BROWARD COUNTY, LLC, *et al*,

     Debtors.

_____/

VISION DEVELOPMENT GROUP
OF BROWARD COUNTY, LLC, and
ISADORE M. COHEN,

     Plaintiffs,

vs.

TMG SUNRISE, LLC, and CHELSEY
FUNDING, LLC,

     Defendants.

_____/

Case No. 07-17778-BKC-RBR
Chapter 11
Jointly Administered

Adv. No. 08-01295-BKC-RBR-A

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This matter came before the Court for hearing on January 30, 2009, upon the Motion for

Summary Judgment and Incorporated Memorandum of Law (the "Motion") [D.E. 58], filed by

Chelsey Funding, LLC ("Chelsey") and TMG Sunrise, LLC ("TMG" and, together with Chelsey, the

"Mezzanine Lenders"), and the Response thereto (the "Response") [D.E. 71] filed by the Debtors.

The Court has considered the Motion and the Response, heard the arguments of counsel, and is otherwise duly informed. For the reasons delineated below, the Court will grant the Motion.

Background and Procedural History

The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on September 20, 2007. Vision Development Group of Broward County, LLC ("Vision") continues to manage its affairs and operate its business as a debtor in possession, and no committee or trustee has been appointed to date.

On August 23, 2005, Vision and the Mezzanine Lenders entered into an agreement (the "Agreement") whereby the Mezzanine Lenders agreed to loan the aggregate principal amount of $10.5 million (collectively, the "Loan") towards the funding of Vision's acquisition and condominium conversion of an apartment complex located at 673 Vista Isles Drive, Sunrise, Florida (the "Property"). The condominium conversion is known as the Isles at Lago Mar (the "Isles"). Vision's repayment obligations with respect to the Loan are reflected in two promissory notes: (1) a note in the principal amount of $5,085,000 made payable to TMG, and (2) a note in the principal amount of $5,415,000 made payable to Chelsey (collectively, the "Notes").

Under the Agreement, Vision's repayment obligations are secured by: (1) Debtor Isadore Cohen's 55% membership interest as the managing member of Vision, and (2) Ben Shmul's 20% membership interest in Vision. TMG and Chelsey also acquired 5% and 18% membership interests in Vision, respectively. The remaining 2% membership interest in Vision is owned by The Modlin Group, LLC, the managing member of TMG.

Both the Agreement and the Notes provide that they are to be governed by and interpreted under New York law.

The Agreement includes provisions indicative of the parties' intent that the Loan be treated as a debt obligation rather than an equity contribution. The Debtors made several representations and warranties to the Mezzanine Lenders in section 5 of the Agreement, including: (1) that the Agreement and Notes "constitute the legal, valid and binding obligations

of [the Debtors] enforceable against [the Debtors] in accordance with their terms"; (2) that Vision was and would remain solvent at the time of and subsequent to the making of the Loan, and would not be undercapitalized as a result thereof; and (3) that the Debtors "have received reasonably equivalent value in exchange for its obligations under the Notes, this Agreement and the other Credit Documents." Section 13 of the Agreement provides in part that neither TMG nor Chelsey "shall be deemed to have assumed any of the liabilities or obligations of a member of any Obligor as a result of this Agreement." Finally, section 34 of the Agreement provides in part that, "Nothing contained in this Agreement...shall be deemed to create an equity investment in [Vision]."

In connection with the Loan transaction, the law firm of Leopold, Korn & Leopold, P.A., Vision's condominium law attorneys, issued and delivered a legal opinion letter (the "LKL Letter") to the Mezzanine Lenders at closing. The LKL Letter opines in part that each of the Loan documents constitutes a "legal, valid and binding agreement," and that "[t]he Loan does not contravene any law or decision of the State of Florida relating to the amount of interest to be charged for a loan or the forbearance of money."

The LKL Letter is particularly important in light of sections 1 and 23 of the Agreement. Section 1 defines the term "Credit Documents," in part, as "documents of any kind relating...to the payment or guarantee of [obligations under the Agreement]." This definition includes the LKL Letter, since the express purpose of that letter was for Vision's counsel to provide an opinion regarding the fairness and validity of the Agreement, Notes, and related closing documents. Section 23 of the Agreement further provides in part that any Credit Document (including, by extension, the LKL Letter) "shall be considered to have been relied upon by [the Mezzanine Lenders]," and that the Credit Document "shall survive the execution and delivery of the Notes...until all Obligations have been indefeasibly satisfied in full."

Moreover, the Notes include Credit Documents (again, including the LKL Letter) in their definitions of "Loan Documents." Each Note further states that the terms, conditions, etc. of the

Loan Documents "are hereby made part of this Note, to the same extent and with the same effect as if they were fully set forth herein." The parties therefore agreed that the LKL Letter, issued and delivered to the Mezzanine Lenders at closing, was expressly incorporated into the Agreement and Notes pursuant to their terms.

The Debtors commenced this Adversary Proceeding on April 21, 2008, by filing the Complaint [D.E. 1] against the Mezzanine Lenders. The Complaint asserts six (6) counts against the Mezzanine Lenders: objections to the claims arising from the Loan (Counts I and II); cancellation of the amounts due under the Notes (Count III); recharacterization of the debt owed the Mezzanine Lenders as equity (Count IV); equitable subordination of the Loan claims (Count V); and breach of fiduciary duty (Count VI).

In support of these counts, the Debtors allege that: (1) the Notes are unenforceable under Florida law due to a usurious interest rate; (2) the Loan should be recharacterized as an equity investment due to the Mezzanine Lenders' alleged status as "insiders" at the time of the Loan, the fact that the Loan was secured by the pledge of certain equity interests in Vision rather than a mortgage on the Property, and the fact that the ultimate repayment to the Mezzanine Lenders was dependent upon the profitability of the Isles; (3) if the Notes in fact reflect debt rather than an equity interest, the Court should equitably subordinate the Loan claims to the level of equity because the interest rate on the Notes is usurious under Florida law and the Mezzanine Lenders orchestrated the Loan transaction to disguise their equity investment as a loan; and (4) because equity and good conscience bound the Mezzanine Lenders to act in good faith and with due regard to Vision's best interest, the Mezzanine Lenders breached a fiduciary duty to the Debtors.

## Conclusions of Law

The Motion seeks summary judgment on all counts of the Complaint pursuant to Federal Rule of Civil Procedure 56(c) (incorporated in Fed. R. Bankr. P. 7056). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56 (made applicable hereto by Fed. R. Bankr. P. 7056 and 9014). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

    A.    *Debtors' Objections to the Loan Claims are Barred by Equitable Estoppel*

The LKL Letter opines that each of the Loan documents constitutes a "legal, valid and binding agreement," and that "[t]he Loan does not contravene any law or decision of the State of Florida relating to the amount of interest to be charged for a loan or the forbearance of money." Simply put, the representations that the Debtors made in the LKL Letter contravene the objections and claims they now assert in Counts I through V of the Complaint. This matter is similar to those in which the Eleventh Circuit Court of Appeals and other courts have dismissed claims under the doctrine of equitable estoppel. Equitable estoppel requires: (1) acts or conduct by a party causing another to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts or conduct; and (3) detrimental reliance by the other party upon the state of things so indicated. *F.D.I.C. v. Harrison*, 735 F.2d 408, 413 (11th Cir. 1984); *Dooley v. Weil (In re Garfinkle)*, 672 F.2d 1340, 1347 (11th Cir. 1982).

The present facts satisfy each of these elements. Through the LKL Letter, the Debtors engaged in conduct that the Mezzanine Lenders relied on in determining that the interest rate on the Loan was legal under Florida law, and that the Loan documents created enforceable debt obligations of Vision and a security interest in certain membership interests therein. The Debtors engaged in this conduct wilfully, as evidenced by the Agreement and Notes incorporating the LKL Letter into their terms and stating that the Mezzanine Lenders would rely on the legal opinions contained therein. Finally, the very existence of this bankruptcy case illustrates that the Mezzanine Lenders' reliance on the LKL Letter was detrimental.

The Debtors have cited *River Hills, Inc. v. Edwards*, 190 So.2d 415, 424 (Fla. 2d DCA 1966), to argue that an opinion letter cannot form the basis of an equitable estoppel defense to a usury claim [D.E. 71, at pp. 9-10]. The *Rivers Hills* opinion states that, "Neither ignorance of the law of usury...nor that it was the opinion of counsel that the loan was not violative of the statute...where the amount of interest is in fact usurious and known to the lender to be, will absolve him from the penalties involved because of usury." 190 So. 2d at 424.

In response, the Court first notes that the *River Hills* case does not involve a legal opinion letter issued by counsel for the borrower. *See* 190 So. 2d at 417-19. The case is thus factually distinguishable for the present matter in a material respect. *See id.*

Furthermore, the four elements of usury are: (1) an express or implied loan; (2) an understanding between the parties that the money lent is to be returned; (3) an agreement to pay a greater rate of interest than the law allows; and (4) a corrupt intent to take more than the allowable legal rate of interest for the use of the loaned money. *Dixon v. Sharp*, 276 So. 2d 817, 819-20 (Fla 1973) (citations omitted). Elaborating on the corrupt intent element, the Florida Supreme Court noted that:

> Florida Courts recognize that usury...is not fully determined by the fact that the lender actually receives more than law permits, *but is determined by existence of a corrupt purpose in the lender's mind to get more than legal interest for the money lent*...To work a forfeiture under the [usury] state the principal must knowingly and willfully charge or accept more than the amount of interest prohibited...If a mere mathematical computation is determinative of intent then the words "intent" and "willfully and knowingly" have no force or effect and might just as well be deleted from the [usury] statute.

*Dixon v. Sharp*, 276 So. 2d at 820 (citations omitted).

The Debtors' argument that the LKL Letter is irrelevant in determining corrupt intent essentially asks the Court to derive intent from a "mere mathematical calculation." *See Dixon v. Sharp*, 276 So. 2d at 820. In accordance with the *Dixon* opinion, the Court has instead examined the circumstances surrounding the entire Agreement to determine if the Mezzanine Lenders possessed the corrupt intent necessary for usury to be present. *See* 276 So. 2d at

820-21. For the reasons already outlined, the Court concludes that the Mezzanine Lenders did

not possess corrupt intent and the Loan was therefore not usurious.

Pursuant to the doctrine of equitable estoppel, Counts I through V of the Complaint are

therefore denied as a matter of law.

B.      *New York Usury Law Governs the Agreement and Notes*

Notwithstanding the above, the Court will address the issue of whether New York or Florida

usury law governs the Agreement and Notes.

Both the Agreement and the Notes provide that New York law shall govern their

interpretation.  A choice-of-law contractual provision should be upheld where the chosen state

has a "normal relation" to the loan transaction on the basis that there is not a strong public

policy against two parties agreeing to apply another state's law.  *See L'Arbalete, Inc. v. Zaczac,*

474 F.Supp.2d 1314, 1320-23 (S.D. Fla. 2007).  Florida courts will enforce a choice of law

agreement even if it is designed to evade Florida's usury laws.  *L'Arbalete, Inc. v. Zaczac,* 474

F.Supp.2d at 1321.

The place of a party's residence or incorporation may provide a "normal relation" to a

transaction as contemplated in a choice of usury laws context, or is at least a compelling factor

in that determination.  *See  L'Arbalete, Inc. v. Zaczac,* 474 F.Supp.2d at 1323.  The Mezzanine

Lenders are both New York limited liability companies headquartered in New York.  That fact

alone could be sufficient to prove a normal relation between the Agreement and New York.

Additionally, however, payment under the Notes was due in New York.  The Debtor and

Lenders met in New York to negotiate the terms of the Loan.  The Mezzanine Lenders closed

the Loan transaction in New York, and funded the Loan from New York.  The parties, all

sophisticated business entities, specifically agreed that the Agreement and Notes would be

governed by New York law.  Accordingly, the Court finds that New York bears a "normal

relation" to the Loan transaction based upon circumstances similar to those present in the

*L'Arbelete* case.

The practical significance of the New York choice-of-law provision in the Agreement is that the New York usury statutes (both civil and criminal) do not apply to loans exceeding $2.5 million. In particular, New York General Obligations Law § 5-501(6)(b) provides in part that, "No law regulating the maximum rate of interest which may be charged, taken or received...shall apply to any loan or forbearance in the amount of two million five hundred thousand dollars or more." N.Y. Gen. Oblig. Law § 5-501(6)(b).

As evidenced by the Agreement and the Notes, each of the loans that the Mezzanine Lenders advanced to Vision exceeded the $2.5 million limitation for applicability of the New York usury laws under General Obligations Law § 5-501(6)(b). Accordingly, any claims and defenses asserted by the Debtors based upon the alleged usurious interest rate of the Loan under Florida law (Counts I through V) are denied as a matter of law.

C.      *No Fiduciary Duty Exists Between the Debtors and Mezzanine Lenders*

In Florida, no fiduciary duty exists between a lender and borrower, creditor and debtor, or sophisticated parties to an arm's length commercial transaction. *See, e.g., Servicios de Almacen Fiscal Zona Franca y Mandatos S.A. v. Ryder Int'l, Inc.*, No. 07-13320, 2008 WL 356842, slip op. at **2 (11th Cir. Feb. 11, 2008); *Behrman v. Allstate Life Ins. Co.*, 388 F.Supp.2d 1346, 1351 (S.D. Fla. 2005); *Lanz v. Resolution Trust Corp.*, 764 F.Supp. 176, 179 (S.D. Fla. 1991).

Though the Debtors allege the existence of a "special relationship" between the parties under which the Debtors espoused confidence in the Mezzanine Lenders, this in of itself does not give rise to a fiduciary duty. *See Lanz v. Resolution Trust Corp.*, 764 F.Supp. at 179 ("The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party."). Accordingly, Count VI of the Complaint is denied as a matter of law.

## Conclusion

In light of the foregoing, it is hereby

**ORDERED** that the Motion [D.E. 58] is **GRANTED**.  The Court will enter a separate

order dismissing the Complaint in accordance therewith.

###

The Clerk shall provide copies to:

Frank Terzo, Esq.

(Attorney Terzo is directed to serve a conformed copy of this order upon all interested parties and to file a certificate of service.)